CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
Amanda Seabock, Esq., SBN 289900
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No.** |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **AMAJ, LLC**, a California Limited Liability Company; **Horizon Concept, Inc.**, a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of AMAJ, LLC, a California Limited Liability Company; Horizon Concept, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. Defendant AMAJ, LLC owned the real property located at or about

Complaint

1378 Oakland Rd., San Jose, California, in October 2018.

3.   Defendant AMAJ, LLC owned the real property located at or about 1378 Oakland Rd., , San Jose, California, in December 2018.

4.   Defendant AMAJ, LLC owns the real property located at or about 1378 Oakland Rd., San Jose, California, currently.

5.   Defendant Horizon Concept, Inc. owned Alura Inn located at or about 1378 Oakland Rd., San Jose, California, in October 2018.

6.   Defendant Horizon Concept, Inc. owned Alura Inn located at or about 1378 Oakland Rd., San Jose, California, in December 2018.

7.   Defendant Horizon Concept, Inc. owns Alura Inn ("Motel") located at or about 1378 Oakland Rd., San Jose, California, currently.

8.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

9.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of

Complaint

the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

12. Plaintiff went to the Motel in October 2018 and December 2018 with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws.

13. The Motel is a facility open to the public, a place of public accommodation, and a business establishment.

14. Guest rooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Motel.

15. Defendants did not offer persons with disabilities with a range of options equivalent to other customers during plaintiff's visits. The required accessible rooms were not dispersed among the various classes of sleeping accommodations available to patrons, including with respect to the number of beds provided.

16. Plaintiff needed two beds—one for himself and one for his aide, who assists him.

17. Additionally, the Motel's website did not allow customers to book accessible guest rooms online.

18. Currently, Defendants do not offer persons with disabilities with a range of options equivalent to other customers. The required accessible rooms are not dispersed among the various classes of sleeping accommodations available to patrons, including with respect to the number of beds provided.

19. Currently, the Motel's website does not allow customers to book

3

Complaint

accessible guest rooms online.

20. Parking spaces are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Motel.

21. Unfortunately, even though there were parking spaces marked and reserved for persons with disabilities in the parking lot serving the Motel during Plaintiff's visits, the parking spaces were not van accessible.

22. The parking stalls measured about 96 inches in width while the access aisles measured about 60 inches in width. These are not van accessible.

23. On information and belief, Plaintiff alleges that the defendants once had van parking space marked and reserved for persons with disabilities at the Motel. Unfortunately, the van parking space was allowed to fade or get paved over.

24. In addition to not having a van-accessible parking space for persons with disabilities, the parking stalls and access aisle were not level with each other because there were built up curb ramps running into the access aisles.

25. These curb ramps caused slopes greater than 2.1%.

26. Currently, there is no van-accessible parking space.

27. Currently, the parking stalls and access aisles are not level with each other.

28. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Motel.

29. Unfortunately, the transaction counter at the Motel was more than 36 inches in height. In fact, the transaction counter was about 50 inches in height.

30. There was no lowered, 36 inch portion of the transaction counter at the Motel for use by persons in wheelchairs to conduct transactions.  In fact, the transaction counter was about 50 inches high.

31. Currently, the transaction counter at the Motel is more than 36 inches in height.

Complaint

32. Currently, there is no lowered, 36 inch portion of the transaction counter at the Motel for use by persons in wheelchairs.

33. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

34. Plaintiff personally encountered these barriers.

35. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

36. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

37. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

38. For example, there are numerous paint/stripe companies that will come and stripe a level, van-accessible parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

39. A common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

40. Plaintiff will return to the Motel to avail himself of its goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the

Complaint

barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

41. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

42. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

43. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

        a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those

Complaint

services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

44. Under the ADA, a hotel must provide persons with disabilities a range of options equivalent to those available to other persons served by the facility. Sleeping rooms and suites required to be accessible must be dispersed among the various classes of sleeping accommodations available to patrons of the hotel and this takes into account the number of beds provided.

45. Here, the failure to provide a range of options equivalent to those available to other persons served by the facility is discriminatory and a violation.

46. Under the ADA, public accommodations that own or operate a place of lodging have an obligation to "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i).

47. Here, the Motel's failure to provide disabled individuals the ability to book accessible guestrooms online through their website, like non-disabled

7

Complaint

individuals, is a violation ADA.

48. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

49. Here, the lack of a van parking space is a violation of the law.

50. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

51. Here, the failure to provide level parking is a violation of the law.

52. Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

53. Here, no such accessible counter has been provided in violation of the ADA.

54. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

55. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

56. Here, the failure to ensure that the accessible facilities were available

and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

57. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

58. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

59. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

60. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

61. Although the plaintiff was markedly frustrated by facing discriminatory barriers, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest physical personal injury greater than the amount of the statutory damages.

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 7, 2019          CENTER FOR DISABILITY ACCESS

By: _____

Chris Carson, Esq.
Attorney for plaintiff

Complaint